```
FILED by H.H.    D.C.
APPEALS

NOV 0 2 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • MIAMI
```

1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF FLORIDA
2                 MIAMI DIVISION
3            Case 07-20305-CR-Altonaga
4
THE UNITED STATES OF AMERICA,
5
                Plaintiff,
6
                              MIAMI, FLORIDA
7     vs.
                              OCTOBER 17, 2007
8 TRAVIS BECKLES,
9          Defendant.
10 ------------------------------------------------------------
           TRANSCRIPT OF SENTENCING PROCEEDINGS
11       BEFORE THE HONORABLE CECILIA M. ALTONAGA,
              UNITED STATES DISTRICT JUDGE
12
APPEARANCES:
13
FOR THE GOVERNMENT:
14
                    JAMES KOUKIOS, A.U.S.A.
15                  Office of the U.S. Attorney
                    99 N.E. 4th Street
16                  Miami, FL  33132
17 FOR THE DEFENDANT:
18                  MICHAEL SPIVACK, A.F.P.D.
                    Federal Public Defender's Office
19                  150 West Flagler Street
                    Miami, FL  33130        305.536.6900
20                                    (Fax) 305.530.7120
REPORTED BY:
21
                    BARBARA MEDINA, RPR-CM
22                  Official United States Court Reporter
                    Federal Courthouse Square, Ste. 404
23                  301 North Miami Avenue
                    Miami, FL  33128-7792   305.523.5518
24                                    (Fax) 305.523.5519
                    Email:  barbmedina@aol.com
25

         TOTAL ACCESS COURTROOM REALTIME TRANSCRIPTION
                      October 17, 2007

1

TABLE OF CONTENTS

2                                                                   Page

3  Paula Andrea Bolivar By Mr. Koukios ..................... 20

4       Direct Examination ................................. 20

5       Voir Dire Examination By Mr. Spivack ................ 23

6       Direct Examination (cont'd) By Mr. Koukios .......... 24

7       Cross-Examination By Mr. Spivack .................... 34

8  Max Medina ............................................. 35

9       Direct Examination By Mr. Koukios .................. 35

10      Cross-Examination By Mr. Spivack ................... 37

11      Redirect Examination By Mr. Koukios ................ 37

12  Reporter's Certificate ................................. 47

13

14                       INDEX TO EXHIBITS

15  Exhibits                    Marked for            Received
                                Identification     in Evidence
16
   Description              Page     Line      Page     Line
17
   Government Exhibits A
18  through E, G-1 and G-2 .......... 26        7

19  Government Exhibits G-1 and G-2 .................. 27        22

20  Government Exhibit A ............................. 30        7

21  Government Exhibit B ............................. 31        6

22  Government Exhibit C ............................. 32        15

23  Government Exhibit D ............................. 33        11

24  Government Exhibit E ............................. 34        3

25

TOTAL ACCESS COURTROOM REALTIME TRANSCRIPTION
October 17, 2007

CITATION INDEX

Page

Almandares-Torres ......................................... 7

Apprendi ................................................. 12

Booker ................................................... 7

Old Chief ................................................ 10

Shepard .................................................. 12

United States versus Greer ............................... 11

SIDE-BAR CONFERENCE INDEX

Descriptions                                                 Page

ADMINISRATIVE CONVENTIONS:

        When counsel does not identify themselves "each time"

they address the Court, the industry-standard speaker

identification is indicated by chevrons, i.e., >>>:

October 17, 2007

 1       THE COURT:  Good morning.

 2       MR. KOUKIOS:  Good morning, Your Honor.

 3       MR. SPIVACK:  Good morning, Your Honor.

 4       THE COURT:  Please be seated.

 5       United States versus Travis Beckles.  Counsel, please

 6 state your appearance.

 7       MR. KOUKIOS:  Good morning, Your Honor.  Assistant

 8 United States Attorney James Koukios.  With me at counsel table

 9 is Special Agent John Jefferson from the FBI.

10       MR. SPIVACK:  Good morning, Your Honor.  Michael

11 Spivack, Assistant Federal Public Defender, on behalf of

12 Mr. Beckles who is present before the Court for sentencing.

13       THE COURT:  From Probation.

14       THE PROBATION OFFICER:  Good morning, Your Honor.

15 Todd Eisenger, on behalf of Probation.

16       THE COURT:  We're here for Mr. Beckles's sentencing

17 hearing following the decision of the jury in this case.

18       I have carefully reviewed the presentence

19 investigation report and I believe there are five addenda to

20 the sentencing memorandum filed by the defendant, as well as a

21 defendant's pro se memorandum, which I have also reviewed, and

22 I know that has been adopted by you, Mr. Spivack, on

23 Mr. Beckles' behalf, as well as the Government's response in

24 opposition to the several sentencing memoranda filed.

25       I will hear from counsel at this time.

October 17, 2007

1    MR. SPIVACK:  Judge, just before we formally start the
2  hearing -- I guess we formally started the hearing -- I filed
3  a motion to continue that I was informed the Court was going to
4  deny.  For the record, I have to ask the Court -- I never got
5  the order.

6    THE COURT:  I thought I entered one.  I denied that
7  motion.

8    I understand your request is that we postpone
9  sentencing for a period of 120 days, although that's not a
10 definite time period, so that you may pursue, on your client's
11 behalf, a setting aside of many, if not all, of his prior State
12 Court convictions because he was not advised when he entered
13 pleas of guilty that the sentences in those cases could be used
14 to enhance him in Federal Court, and I am denying the request
15 for continuance for several reasons.  First of all, there is no
16 guaranty that that endeavor will be completed in 120 days.
17 More likely than not, it would take far in excess of that time
18 because it is not within your control as his attorney how long
19 the process would take.

20    Second, any sentence that I impose today is subject to
21 being revisited if and when those state Court convictions are
22 set aside.  If you are successful, you can always come back to
23 this Court and advise the Court there was no longer a basis for
24 any enhancement here.

25    MR. SPIVACK:  Thank you, Your Honor.

October 17, 2007

 1                 THE COURT:  Thank you.

 2                 MR. SPIVACK:  Do you want to hear --

 3                 THE COURT:  I don't know who would like to go first,

 4     Mr. Koukios or you.

 5                 MR. SPIVACK:  Mr. Koukios, being a gentleman as

 6     always, is setting me go first.

 7                 THE COURT:  All right.

 8                 MR. SPIVACK:  First of all, Your Honor, so it's clear

 9     on the record, I'm not going to take up the Court's time with

10     all the arguments we made, we placed before the Court in the

11     sentencing memorandum or in the various addenda to the

12     sentencing memorandum.  I just want to highlight two arguments.

13                 The first argument, Your Honor, is the

14     Almandares-Torres/Booker argument, which was in the last

15     addendum, and it's our position, Your Honor, the reasoning

16     behind Booker and all those following cases, the cases that

17     follow Booker, really show Almandares-Torres is no longer good

18     law.

19                 To break it down into a nutshell, we think it's a

20     situation, if you remember -- I know when I was younger they

21     told me the story of the emperor with no clothes.

22                 THE COURT:  I'm very familiar with it.

23                 MR. SPIVACK:  The Defense Bar in the United States,

24     basically, thinks Almandares-Torres is now the emperor with no

25     clothes.  They were waiting for some Judge to say "Hey, wait a

1   minute.  Booker and the reasoning behind Booker tells us
2   the" -- quote/unquote -- "naked truth" -- "that
3   Almandares-Torres is no longer good law," basically,
4   Almandares-Torres is not good law anymore.

5        What Booker tells us is that the Constitution requires
6   the Grand Jury to determine certain facts and then a trial jury
7   to determine certain facts beyond a reasonable doubt.

8        When you look at Almandares-Torres and the cases that
9   follow that, they're, basically, saying "We don't have to
10       present that fact to a jury because it's so easy to prove."

11       It's our position whether a fact is easy to prove or
12  hard to prove really isn't the issue.  The issue is under the
13  Constitution who has to find the fact, and we believe under the
14  Constitution, under Booker, that a Grand Jury has to find the
15  fact and return -- the facts in the Indictment -- and that the
16  trial jury would have to find the fact beyond a reasonable
17  doubt.

18       So, in sum, that's that argument.  I don't know if
19  Mr. Koukios wants to respond to that.

20       THE COURT:  Why don't you present everything and I'll
21  hear from him.

22       MR. SPIVACK:  Thank you, Judge.

23       The sentencing memorandum -- the other argument I
24  wanted to highlight was the original sentencing memorandum and
25  the argument on that is, basically, this:  I'm representing a

October 17, 2007

1  man whose criminal record shows that he has committed numerous
2  offenses, but they're all relatively minor.

3      When I say that, you can tell that by the sentences he
4  received.  In nine of his cases, he received four days or less.
5  I don't think -- I think in one case, he received a year.  All
6  his other sentences have always been much less than that.  But
7  because he has this number of priors and because they're
8  characterized such as sale of cocaine, the Guidelines,
9  basically, pump up his possible sentence to 30 years to life.

10      So we have a man who is convicted not for using a gun,
11  not for pointing the gun at anyone, not for hurting anyone with
12  a gun, but -- in fact, he wasn't even in actual possession of
13  the gun.  It was a constructive possession of the case.  He
14  does have numerous priors, but they're all relatively minor,
15  and yet the Guidelines advise the Court that the minimum you
16  should give him is a 30 year sentence.  I mean, on the face of
17  it, that's just wrong.

18      Your Honor, under 18 3553, is free to consider the
19  Guidelines as one factor, but you don't have to give it any
20  more weight than any other factor, and if you look at the other
21  factors, his prior record and the way this crime was committed,
22  we're asking Your Honor not to impose a sentence of 30 years to
23  life.  We're asking Your Honor to impose the minimum sentence
24  that you can, if Your Honor disagrees with us and thinks
25  Almandares-Torres is still valid, which is the 15 year minimum

October 17, 2007

1    mandatory.

2            Thank you, Your Honor.

3            THE COURT:   Thank you.

4            Mr. Koukios.

5            MR. KOUKIOS:   Thank you, Your Honor.

6            Responding to the first argument, the

7    Almandares-Torres argument, regardless of what the state of the

8    law is, Mr. Beckles waived that by stipulating to his felonies.

9    Had he objected to them, I would have put all six of these in,

10   I would have proved them up to the jury and we wouldn't be

11   here.

12           THE COURT:   Let me ask you a question in that regard.

13   You are saying he waived the ability to argue now the

14   convictions were not proven to the jury beyond a reasonable

15   doubt.   What he stipulated to was that he was a convicted

16   felon.   Isn't that his stipulation?

17           MR. KOUKIOS:   That's right, and once that happens, I'm

18   no longer able to put in the nature or the number of those

19   convictions.

20           THE COURT:   The stipulation wasn't "I'm a convicted

21       felon and these are all of my prior convictions."

22           MR. KOUKIOS:   Well, I can't do that, Your Honor.

23   Under Old Chief, if he says "I'm stipulating I'm a felon," I'm

24   done.

25           I would have loved to put in all six of his

October 17, 2007

1 convictions. I would have loved to have shown the jury this

2 man with a sawed-off shotgun around a six-year old kid was a

3 drug dealer and a violent felon. It would have bolstered my

4 case.

5      When Agent Jefferson testified Mr. Beckles said "I'm a

6     drug dealer and got this shotgun to protect myself during a

7     drug war," it would have bolstered my witness.

8      I would have put that in, absolutely, and I would have

9 asked Your Honor to put all six of them in, but under Old

10 Chief, he says "I'm a felon" and I'm cut off at the knees right

11 there. I can't say the nature unless it's admissible under

12 404(b).

13      So, by stipulating to that at this point, I think he

14 waived this argument altogether. I also believe he admitted

15 them to all of them during the suppression hearing. He said

16     "Yeah, I've had three or four drug distribution

17     felonies." But, really, the stipulation at trial, I think,

18 cut this argument off at its head.

19      Regardless, the 11th Circuit has repeatedly addressed

20 this issue and come down against Mr. Beckles' argument. The

21 most recent one I found, Your Honor -- and I apologize. I

22 didn't have a chance to write this, but I just got the 19th

23 addenda, 20th addenda --

24     MR. SPIVACK: Five.

25     MR. KOUKIOS: -- last night.

October 17, 2007

1      But the case is United States versus Greer, G-r-e-e-r,
2  440 F.3d 1267, 11th Circuit, February 24th, 2006, and on pages
3  1273 to 1276 the 11th Circuit dealt with this issue at length.

4      Just a couple of highlights on page 1273:  The Court
5  said "More than once we have specifically rejected the argument
6      that Almandares-Torres was undermined by the Apprendi
7      decision."

8      Continuing on, it addresses the argument that Booker
9  has extended Apprendi and rejects that.  Reverses the District
10 Court and found that Booker overruled the Almandares-Torres
11 decision.  Notes that under Shepard it's implicit that the
12 Judge is able to make these findings, and then cites a lot of
13 cases saying that you can't overturn a Supreme Court decision
14 based on a prediction that the Supreme Court will reverse
15 itself, and those are the remaining pages that I cited, 1274
16 through 1276.

17     So as a legal matter, even if he didn't waive it, as a
18 matter of law he loses on that point.

19     Secondly, Your Honor on the 3553(a) -- does Your
20 Honor --

21     THE COURT:  No, please continue.

22     MR. KOUKIOS:  -- on the 3553(a) factors, we can't
23 account for what the state does here.  Unfortunately, the state
24 system is overburdened at this point and career criminals get a
25 pass every day.  That's why, fortunately, we have the Federal

October 17, 2007

1  government here.

2      When we see somebody with 18 arrests, including six

3  convictions for drug distribution and violent crimes, getting

4  passes from the state, we step in and we try to put an end to

5  that.

6      The Federal government has recognized that with the

7  Armed Career Criminal Act, Congress, in its direction to the

8  Sentencing Commission, recognized this by saying "When you have

9      an armed career criminal and a career offender, put the

10      Guidelines at the top of the maximum sentence."  That's

11  Congressional directive.

12      So, first of all, the minor sentences is more a

13  reflection of a broken state system than it is anything about

14  this man here.  He's a drug dealer and he admitted it to Agent

15  Jefferson in this case.  "I deal drugs.  I got involved in a

16      drug dispute and I got that shotgun to protect myself

17      during the drug dispute."

18      Who knows, even assuming Mr. Beckles' arguments are

19  correct, he graduated from being a nonarmed drug dealer to a

20  drug dealer armed with a sawed-off shotgun to protect his

21  business from warring factions within his gang.

22      The worst part of this, Your Honor, is that he brought

23  that shotgun, that sawed-off shotgun into the home of a

24  six-year old boy and, unfortunately, we live in a community

25  where innocent children and innocents are getting caught in the

October 17, 2007

1  middle of drive-by shootings and drug wars.  I cited a couple
2  of articles from the Herald.  We all know last year a nine-year
3  old girl who got shot on her porch in a drive-by shooting, an
4  innocent who got caught in the war.

5       We can't continue to excuse these things.  By the
6  grace of God this six-year-old boy didn't find the sawed-off
7  shotgun and shoot himself in his face with it.  By the grace of
8  God that drug war didn't spill into the apartment other than
9  the fact Mr. Beckles brought the shotgun in.

10       I think that one of the most important factors we need
11  to look at under 3553(a) is to protect the public and send a
12  message, and that's what we need to do in cases like this.
13  When an admitted and multi-times convicted drug dealer brings a
14  shotgun into the home of a six-year old boy, we need to say to
15  society "That's enough.  We can't do this."

16       As I said, the Congressional directives -- and I
17  quoted them -- when the Armed Career Criminal Act and the
18  career offender Guidelines were being written by the Sentencing
19  Commission, under United States Code Congress said "Set those
20   at the top because we've had enough of this," and that's,
21  of course, another factor that we need to consider here.

22       So, when we look at he's only 24.  He has had 18
23  run-ins with the law at least already.  This is not a person
24  who shows a lot of promise in the future.  He has had these
25  minor sentences which have done nothing for him except endanger

October 17, 2007

1  the community further by allowing him to go out and get a

2  sawed-off shotgun and bringing it into the home of a

3  six-year-old boy.  Looking at the Congressional objectives and

4  the need to protect our community, I believe a high end

5  sentence is appropriate in this case.

6          Thank you very much

7          THE COURT:  Thank you very much.

8          MR. SPIVACK:  I wanted to focus on what evidence the

9  Government has to present at the sentencing hearing.

10          As Your Honor pointed out, at the trial Mr. Beckles

11  stipulated that he had a felony conviction.  In order for the

12  enhancement to take place, the evidence has to be before the

13  Court -- it has to be competent evidence under Shepard -- not

14  that he has a felony conviction, but that he has three felony

15  convictions for either a serious drug offense, a violent felony

16  or a combination and, so, at this point there is no evidence

17  before Your Honor as to anything other than he has a felony

18  conviction.

19          I looked at the part of the transcript that counsel

20  quoted in his motion and all it says is -- the question by

21  counsel was:

22          "Question:  Well, did you plead guilty at least three

23      or four times to distributing drugs?  Is that right?"

24          Mr. Beckles' answer is "Yes, sir."

25          But that's not enough.  We have to know what type of

October 17, 2007

1    drugs he supposedly was distributing in order to find out

2    whether those were felonies or not, and just the way that

3    counsel asked the question, unfortunately -- or fortunately,

4    depending on which side of this argument you're on -- doesn't

5    give the Court enough information.

6         The only other thing Your Honor has is the PSI, but

7    the PSI under Shepard is not evidence of what the underlying

8    crimes were.  It's just -- it's a report.

9         Now, I'm sure the Government has the ability to get

10   the certified copies of conviction for Mr. Beckles.  In State

11   Court in Florida, the person who is convicted, their

12   fingerprints are attached to the judgment and then the

13   Government can have those fingerprints compared to Mr. Beckles

14   and present that evidence here at the sentencing.  That wasn't

15   done.

16        MR. KOUKIOS:  I'm prepared to do that, Your Honor.  I

17   have the fingerprint analyst here and I have all the certified

18   convictions which I did attach.  I'm more than willing to do

19   that right now.

20        THE COURT:  Shall we proceed in that?

21        MR. SPIVACK:  Let me ask my client, Judge.

22        THE COURT:  Very well.

23        [Counsel and the defendant confer at 8:52 a.m.]

24        MR. SPIVACK:  Judge, in order to make sure the record

25   is clear on this, why don't we just go ahead with the

October 17, 2007

1  fingerprinting?

2          Thank you, Your Honor.  I appreciate it.

3          THE COURT:  Very well.

4          Is that the lady sitting behind you, Mr. Koukios?

5          MR. KOUKIOS:  Yes, Your Honor.

6          THE COURT:  Why don't you approach the witness chair,

7  please.

8          MR. KOUKIOS:  The Government calls Paula Bolivar.

9          Your Honor, we have the standards here that the

10 Marshals took from Mr. Beckles when he came in.  Mr. Spivack

11 is, apparently, contesting those as well.

12         THE COURT:  Are those originals?

13         MR. KOUKIOS:  Yes.

14         I can put testimony on from Agent Jefferson that he

15 picked these up from the Marshals and these are the ones

16 matched to Travis Sharod Beckles, that they have the same

17 offense, they have the book date, all those things, his birth

18 date, his FBI number, or Mr. Spivack wants him to be printed

19 right now and have this redone in front of the Court.

20         I would like the Court to consider this in determining

21 3553(a) factors, as well that there is no acceptance of

22 responsibility whatsoever in this case.

23         I mean, this is unbelievable to me that we have

24 certified convictions and we're going to these lengths.  I

25 understand that he has a right to do it, but I believe the

October 17, 2007

```
 1  Court should consider this in determining what kind of sentence
 2  should be applied here because Mr. Beckles does not show any
 3  hope of ever accepting responsible for any of his actions.
 4          THE COURT:  Do we have the ability to fingerprint now?
 5  I don't know.
 6          MR. KOUKIOS:  Can you print now?
 7          THE WITNESS:  I can fingerprint him, but to make a
 8  comparison I have to have a second analyst with me to verify my
 9  work.  It's my protocol.
10          THE COURT:  To verify your own work, you need a second
11  analyst?
12          THE WITNESS:  Yes.  That is Miami-Dade County's
13  protocol.
14          THE COURT:  I see.  That's not the Court's protocol
15  necessarily.  That's a rule you have for your work purposes.
16          THE WITNESS:  Yes.
17          THE COURT:  Why don't we have you fingerprint the
18  defendant.  We can watch you do it and then proceed with your
19  testimony and Mr. Spivack can seek to question the weight that
20  I should give your testimony because you did not follow your
21  own internal protocol.
22          MR. SPIVACK:  Judge, just real briefly in brief
23  response, I know Your Honor is not going to penalize the man
24  for going through the process --
25          THE COURT:  I understand Mr. Koukios' argument, but I,
```

October 17, 2007

1  similarly, as I was listening to his comments, I'm similarly

2  thinking I don't think anyone would willingly assist in the

3  process of getting himself locked up for 30 years to life.  I

4  understand each side's perspective here.

5          Ms. Bolivar, can you do the fingerprinting for us?

6          THE WITNESS:  Absolutely.

7          THE COURT:  You can step down.

8          THE MARSHAL:  We're going to have to take a brief

9  recess.  I have to put him in the back and go downstairs and

10 bring up the fingerprint card, the stand.

11         THE COURT:  Go right ahead.

12         MR. SPIVACK:  Thank you, Judge.

13         THE COURT:  Thank you.

14          [There was a short recess at 8:59 a.m.]

15     [Defendant fingerprinted by Ms. Bolivar in open court.]

16          [Counsel and the defendant confer at 9:08 a.m.]

17         THE MARSHAL:  Your Honor, we have also been requested

18 to bring a magnifier to examine the prints with.  It will be

19 approximately 10 minutes before our expert can get into the

20 office.

21         THE COURT:  Why don't we just take a 15 minute recess.

22 Is that good?

23         MR. SPIVACK:  Thank you, Judge.

24         THE COURT:  Let me know when you're ready.

25          [There was a short recess at 9:11 a.m.]


October 17, 2007

## Bolivar - Direct

1          THE COURT:  Please be seated.

2          MR. KOUKIOS:  Your Honor, the Government calls Paula

3  Andrea Bolivar.

4      PAULA ANDREA BOLIVAR, GOVERNMENT'S WITNESS, SWORN

5                    DIRECT EXAMINATION

6  [Beginning at 9:45 a.m., 10/17/07.]

7  BY MR. KOUKIOS:

8  Q.  Would you, please, state your name and spell your last

9  name?

10  A.  Paula Bolivar, B-o-l-i-v-a-r.

11  Q.  How are you employed?

12  A.  I work for the Miami-Dade Police Department as a

13  fingerprint analyst.

14  Q.  Can you explain what your duties and responsibilities are

15  as a fingerprint analyst?

16  A.  Most of our work is to make fingerprint comparisons for

17  jail bookings or compromised identity or unknown remains.

18  Q.  What do you mean by "fingerprint comparisons"?

19  A.  Fingerprint standards are the ones that are either taken on

20  the Live Scan machine or by ink, submitted to us by an agency,

21  whatever agency it is, and they are compared to the fingerprint

22  files that we have either in our database or in our hard files.

23  A comparison is made through analysis, comparison, evaluation

24  and verification.

25  Q.  When you say -- you said one thing was a standard.

October 17, 2007

## Bolivar - Direct

1  Correct?

2  A.   Yes.

3  Q.   And that's compared against hard copies or something?

4  A.   A submitted sample.

5  Q.   Would that include certified copies of convictions that

6  have fingerprints attached to them?

7  A.   Yes.

8  Q.   Can you, please, explain your training to become an

9  analyst?

10  A.   Well, a Bachelor's Degree is required.  In my case, I have

11  a Bachelor's in biology.  We go through an intensive in-house

12  training which requires several classes, the basic fingerprint

13  comparison class, the advanced comparison class, courtroom

14  testimony and such, an intensive 12-month training program.

15  Q.   Did you successfully complete that training program?

16  A.   Yes.

17  Q.   Were you awarded any kind of a certificate?

18  A.   Permanent status as an employee

19  Q.   Of the Miami-Dade Police Department?

20  A.   Yes.

21  Q.   How long have you been a fingerprint analyst?

22  A.   Approximately a year and a half.

23  Q.   Approximately how many standards have you compared against

24  things like certified convictions?

25  A.   Over 10,000.

October 17, 2007

## Bolivar - Direct

1  Q.  And during that process when you compared those, are you

2  also required to submit your comparisons to somebody else for

3  an independent verification?

4  A.  Independent verification is required for all positive

5  identifications.  That is the Miami-Dade Police Department's

6  protocol.

7  Q.  In this case, have you -- well, let me step back for a

8  minute.

9        Can you, please, explain the process for the

10  comparison, comparing a standard against another set of

11  fingerprints?

12  A.  Absolutely.

13        A fingerprint card usually, or just a fingerprint on

14  any document, is first analyzed.  We analyze level 1 detail,

15  which is the general ridge flow and its pattern type.  Then you

16  make a hypothesis.  Could this possibly be the person?  Is

17  there sufficient detail to make a comparison?

18        Then you go through the comparison stage, which is a

19  side-by-side comparison of level 1 and level 2 detail, which

20  are what most people call ridge events or ridge characteristics

21  or points.

22        Then an evaluation is made.  Is there a sufficient

23  number of points, characteristics of the ridge flow and the

24  type of pattern, is it sufficient to make a positive

25  identification?

October 17, 2007

## Bolivar - Voir Dire

1          And then after that, the evaluation.  It's either an

2    identification or not an identification or insufficient detail

3    to make either determination, and then it is verified by a

4    second competent analyst.

5    Q.  When you say "sufficient details," is that a hard and fast

6    number or does it vary on a case-by-case basis?

7    A.  No, the U.S. does not have a set standard of points.

8    Again, we go by more than points.  It's generally up to the

9    analyst and their experience.

10         I go anywhere between 10 to 16 points, but it depends

11   on the clarity of the print in order to make that

12   determination.

13   Q.  Have you ever been called on to testify in court before

14   about fingerprint analysis?

15   A.  This is my first time.

16         MR. KOUKIOS:  Your Honor, would you like any more

17   background information?

18         THE COURT:  I don't need any more.

19         MR. KOUKIOS:  I tender the witness as an expert in

20   fingerprint comparison analysis.

21         THE COURT:  You may proceed.

22         MR. SPIVACK:  I'm sorry, Judge.  I apologize.

23         Could I just voir dire?

24         THE COURT:  You may voir dire, certainly.

25                      VOIR DIRE EXAMINATION

October 17, 2007

## Bolivar - Direct (cont'd)

1  BY MR. SPIVACK:

2  Q.  You did the 10,000 comparisons.  They were double-checked

3  by another expert at Metro-Dade Police Department.  Did you

4  ever make a mistake?

5  A.  No.

6           MR. SPIVACK:  Thank you.

7                     DIRECT EXAMINATION

8  [Beginning at 9:50 a.m., 10/17/07.]

9  BY MR. KOUKIOS:

10  Q.  In this case, did FBI Special Agent John Jefferson submit

11  to the Miami-Dade Crime Lab a standard and judgments of

12  conviction for your comparison?

13  A.  Yes.

14  Q.  Did you perform those comparisons?

15  A.  Yes.

16  Q.  And did you use the techniques and qualifications and

17  skills you just testified about to do those?

18  A.  Yes.

19  Q.  Including independent verification?

20  A.  Yes.

21  Q.  As well, did you fingerprint Mr. Beckles in open court

22  today?

23  A.  Yes, I did.

24  Q.  Now, we did submit those fingerprints for independent

25  verification today.  Is that correct?

October 17, 2007

Bolivar - Direct (cont'd)

1  A.   Yes.

2  Q.   Just to be clear, the person who did the independent

3  verification was not a Miami-Dade employee.   Correct?

4  A.   Correct.

5  Q.   And you do not have any personal opinion of whether that

6  person is a competent or qualified person.   Correct?

7  A.   Right.

8  Q.   And, ordinarily, you would prefer or you're required to go

9  through somebody else at Miami-Dade Police Department?

10 A.   It's preferred.

11 Q.   But if the Judge tells you to go ahead today and testify

12 about it, you'll do so under her order?

13 A.   Yes.

14        MR. KOUKIOS:   Judge, for her safety of her job, we

15 would request that you order her to do that in this case.

16        THE COURT:   I thought I had done that before.

17        But you're so ordered to proceed without the

18 independent verification.

19        MR. KOUKIOS:   We did have independent verification,

20 Your Honor, but --

21        THE COURT:   By somebody outside the department.

22        MR. KOUKIOS:   -- by a Marshal.

23        May I approach the witness, Your Honor?

24        THE COURT:   You may.

25 BY MR. KOUKIOS:

October 17, 2007

## Bolivar - Direct (cont'd)

1  Q.  I have handed you what has been marked Exhibits A through
2  E --
3          MR. KOUKIOS:  And, Your Honor, those follow the
4  exhibit letters that were attached to my response.
5  BY MR. KOUKIOS:
6  Q.  I have also handed you Exhibits G-1 and G-2.
7          Let's start out with exhibits G-1 and G-2.  What are
8  those exhibits?
9      [Government Exhibits A through E, G-1 and G-2 marked for
10                        identification].
11  A.  This is a standard fingerprint card FD-249 --
12          THE COURT:  Which one, G-1 or G-2?
13          THE WITNESS:  G-1.
14  A.  -- bearing the name Beckles, Travis Sharod with a date of
15  birth of 2/2484 and bearing FBI number 963392FD7.  These were
16  taken with a date of arrest on 4/12 2007.
17  Q.  What, if any, use did you make of Exhibit G-1 in your
18  analysis?
19  A.  In my analysis in court or with the comparison?
20  Q.  Both.
21  A.  As I did today, I fingerprinted the defendant and used it
22  as a standard of comparison for the prints that I took here.
23  Q.  The prints that you took today are Exhibit G-2?
24  A.  Yes.
25  Q.  And you used Exhibit G-1 as a standard?

## Bolivar - Direct (cont'd)

1  A.  Yes.

2  Q.  Did you also use Exhibit G-1 as a standard against

3  Government's Exhibits A through E?

4  A.  Yes.

5  Q.  And how do you recognize G-1 as the standard that you used?

6  A.  I initial and date the top of the fingerprint card.

7  Q.  How do you recognize Exhibit G-2 as the standard you took

8  in court today?

9  A.  I signed the back with my badge number and the date.

10       MR. KOUKIOS:  Your Honor, I would move for admission

11  of Exhibits G-1 and G-2.

12       THE COURT:  Any objection?

13       MR. SPIVACK:  We would object until the second witness

14  testifies.

15       THE COURT:  The second witness being?

16       MR. SPIVACK:  The Marshal.

17       MR. KOUKIOS:  If you want the independent verifier to

18  testify as well Your Honor.

19       THE COURT:  I believe I indicated that was an issue

20  that Mr. Spivack could probe to impeach the witness or test the

21  weight of the testimony.

22       So I'll overrule the objection.  The documents are

23  admitted.

24  [Government Exhibits G-1 and G-2 received in evidence at 9:53

25                          a.m.]

October 17, 2007

## Bolivar - Direct (cont'd)

 1  BY MR. KOUKIOS:

 2  Q.  Were you able to make any conclusions about the prints in

 3  Exhibits G-1 as compared to the prints in Exhibit G-2?

 4  A.  They are identified to the same individual.

 5  Q.  That would be Travis Beckles?

 6  A.  Yes.

 7  Q.  And were you able to make that determination through the

 8  techniques and skills that you testified about earlier?

 9  A.  Yes.

10  Q.  Let's go ahead now -- if you can keep Exhibit G-1 in front

11  of you.  I'm sorry.  Just to be clear, Exhibit G-1 and Exhibit

12  G-2 are the fingerprints of the same person?

13  A.  Yes.

14  Q.  If you could keep Exhibit G-1 in front of you and turn to

15  Exhibit A.

16  A.  (Complied.)

17  Q.  Is Exhibit A a certified copy of the Judgment & Conviction

18  and some other supporting documents in Florida case number

19  F06-33667?

20  A.  Yes.

21  Q.  Have you seen Exhibit A before?

22  A.  Yes.

23  Q.  When did you see that?

24  A.  On October 13th, 2007.

25  Q.  And on what occasion did you have to see Exhibit A?

October 17, 2007

## Bolivar - Direct (cont'd)

1  A.  I was assigned to make the comparison against standard A

2  for this case.

3  Q.  And just to be clear, when you said "standard A," that's

4  the terminology that you labeled Exhibit G-1?

5  A.  Exactly.

6  Q.  Standard A and Exhibit G-1 are the same?

7  A.  Yes.

8  Q.  Exhibit A, which is the conviction, does that have a set of

9  fingerprints attached to it?

10  A.  Yes.

11  Q.  And were you able to compare the fingerprints in Exhibit A

12  to the fingerprints in Exhibit G-1?

13  A.  Yes.

14  Q.  And what were your conclusions?

15  A.  They are identified to the same person.

16  Q.  And you used the same techniques and skills you testified

17  about earlier to make those comparisons?

18  A.  Yes.

19  Q.  For the record, Exhibit A, the fingerprints to the

20  certified conviction in Exhibit A, match the fingerprints of

21  the defendant, Travis Beckles?

22  A.  Yes.

23  Q.  Please turn to Exhibit B.

24  A.  (Complied.)

25  Q.  Is that a certified copy of the Judgment & Conviction and

## Bolivar - Direct (cont'd)

 1  other supporting documents in Florida case number F05-18871?
 2  A.  Yes.
 3  Q.  Have you had occasion --
 4          MR. KOUKIOS:  I'm sorry, Your Honor.  I would move for
 5  admission of Exhibit A.
 6          MR. SPIVACK:  Subject to the objection about the
 7  second witness, Judge.
 8          THE COURT:  Very well.  Admitted.
 9     [Government Exhibit A received in evidence at 9:56 a.m.]
10  BY MR. KOUKIOS:
11  Q.  Back to Exhibit B.  Have you had occasion to see Exhibit B
12  before today?
13  A.  Yes.
14  Q.  When was that and under what circumstances?
15  A.  On October 13th, 2007 I was assigned to make the
16  comparison.
17  Q.  How do you know that?
18  A.  I have initialed my -- I'm sorry -- the fingerprints that
19  are reflected in the judgment for case Echo 518871 with the
20  date and indicating that they have been identified to the
21  standard fingerprint card A with FBI number 963392FD7.
22  Q.  Again, that's Exhibit G-1?
23  A.  Yes.
24  Q.  Were you able to determine that the fingerprints belonged
25  to Travis Beckles?

## Bolivar - Direct (cont'd)

1  A.  Yes.

2  Q.  Using the same techniques and skills you testified about

3  earlier?

4  A.  Yes.

5      MR. KOUKIOS:  Your Honor, I would move for admission

6  of Exhibit B.

7      THE COURT:  Admitted.

8  [Government Exhibit B received in evidence at 9:57 a.m.]

9  BY MR. KOUKIOS:

10  Q.  Let's turn now to C.

11      MR. SPIVACK:  I'm sorry, Judge.  Subject to the

12  objection about the second witness.

13      THE COURT:  Yes.

14  BY MR. KOUKIOS:

15  Q.  By the way, going back to A, you also initialed and put

16  your badge number on that as well?

17  A.  The initial, date and what I compared it against.

18  Q.  Exhibit C, is that a certified conviction for Florida case

19  number F04-36481?

20  A.  Yes.

21  Q.  Have you had occasion to see Exhibit C before and what was

22  that occasion?

23  A.  Yes.

24      On October 13th, 2007, and I was assigned to make the

25  comparison for this case.

October 17, 2007

## Bolivar - Direct (cont'd)

1  Q.   How do you recognize that as the same certified conviction

2  you saw?

3  A.   I have initialed, dated and listed the fingerprint card as

4  having been identified with standard reflecting FBI number

5  963392FD7.

6  Q.   That would be Exhibit G-1?

7  A.   Yes.

8  Q.   And using the same techniques and skills that you talked

9  about earlier, were you able to make the comparison?

10  A.   Yes.

11  Q.   What was your conclusion?

12  A.   They have been identified to exhibit -- standard A or

13  Exhibit G-1.

14       MR. KOUKIOS:  Your Honor, I would move for Exhibit C

15  to be admitted in evidence.

16       THE COURT:  Admitted.

17   [Government Exhibit C received in evidence at 9:58 a.m.].

18  BY MR. KOUKIOS:

19  Q.   Turn now to Exhibit D, please.  Is that a certified

20  conviction for Florida case number F03-24434?

21  A.   Yes.

22  Q.   Have you had occasion to see Exhibit D before and what were

23  the circumstances?

24  A.   Yes.  On October 13th, 2007, I was assigned to make the

25  comparison for this case.

October 17, 2007

## Bolivar - Direct (cont'd)

1   Q.  How do you know that?

2   A.  I have initialed, dated and stated I made the comparison

3   against standard A or G-1.

4   Q.  And using the same standards and skills you testified about

5   earlier, were you able to make a determination about whose

6   fingerprints are on Exhibit D?

7   A.  Yes.

8   Q.  Whose?

9   A.  Travis Beckles.

10          MR. KOUKIOS:  Your Honor, I would move for admission

11   of Exhibit D.

12          THE COURT:  Admitted.

13      [Government Exhibit D received in evidence at 9:59 a.m.]

14   BY MR. KOUKIOS:

15   Q.  Exhibit E, is that a certified copy of the judgment and

16   conviction and other documents in F04-10923?

17   A.  Yes.

18   Q.  Have you had occasion to see Exhibit E before and what was

19   the occasion?

20   A.  Yes.

21          On October 13th, 2007, my initials are reflected on

22   here and it was identified with standard A or G-1.

23   Q.  Using the same techniques and skills that you testified

24   about earlier, were you able to determine whose fingerprints

25   are on Exhibit E?

October 17, 2007

Bolivar - Cross

1  A.  They have been identified with Travis Beckles.

2         MR. KOUKIOS:  Your Honor, I move for admission of

3  Government's Exhibit E.

4         THE COURT:  Admitted.

5      [Government Exhibit E received in evidence at 9:59 a.m.]

6         MR. KOUKIOS:  Your Honor, I tender the witness.

7         THE COURT:  Cross-examination.

8         MR. SPIVACK:  Just briefly, Judge.

9                       CROSS EXAMINATION

10  [Beginning at 10:00 a.m., 10/17/07.]

11  BY MR. SPIVACK:

12  Q.  There was a gentleman here who also did a comparison today?

13  A.  Yes.

14         MR. SPIVACK:  That's it.

15         THE COURT:  Thank you.

16         Ms. Bolivar, you may step down.  Thank you, ma'am.

17         MR. KOUKIOS:  May I retrieve the exhibits from the

18  witness?

19         THE COURT:  Yes.

20         MR. KOUKIOS:  Would you like them?

21         THE COURT:  They need to be made a part of the record.

22  I have your copies here.

23         MR. KOUKIOS:  G-1 and G-2 were -- these were the

24  actual certified copies.  The copies I submitted, Your Honor,

25  didn't necessarily have the certification.  Sometimes they are

October 17, 2007

## Medina - Direct

```
 1  on the back.  Should I go ahead and --

 2            THE COURT:  Please.  Thank you.

 3            MR. KOUKIOS:  (Handing to the Court.)

 4            Your Honor, I would be happy to call the second

 5  witness, if you wish.  He's here.

 6            THE COURT:  Why don't we just have him testify

 7  briefly.  Where is he?

 8            MR. KOUKIOS:  I asked him to wait out in the lobby.

 9            THE COURT:  Yes.

10            MR. KOUKIOS:  Your Honor, may I have G-1 and G-2 back?

11            THE COURT:  Yes.

12

13       MAX MEDINA, RESPONDENTS' WITNESS, SWORN

14                 DIRECT EXAMINATION

15  [Beginning at 10:02 a.m.]

16  BY MR. KOUKIOS:

17  Q.  Good morning, sir.

18  A.  Good morning.

19  Q.  Would you, please, state your name and spell your last

20  name.

21  A.  Max Medina, M-e-d-i-n-a.

22  Q.  How are you employed?

23  A.  I'm a deputy with the U.S. Marshal's.

24  Q.  How long have you been a deputy?

25  A.  22 years.
```

October 17, 2007

## Medina - Direct

1   Q.   We notice you're in civilian clothes today.   Were you

2   called in at the last minute?

3   A.   Yes.

4   Q.   Thanks for coming in.

5           During your duty, your 22-year tenure as a Deputy

6   Marshal, have you ever had the occasion to analyze fingerprints

7   for comparison?

8   A.   Yes.

9   Q.   Can you briefly explain what your training was to do that?

10   A.   In 2002 I attended a two-week course.   It was given by the

11   Florida Department of Law Enforcement and it was just a

12   full-time basis, the two weeks, comparing fingerprints.

13   Q.   Have you ever been called on to testify in court about

14   fingerprint comparison?

15   A.   About two times.

16   Q.   Take a look at what has already been admitted as Exhibits

17   G-1 and G-2.

18   A.   Yes.

19   Q.   Were you asked to look at those two cards today?

20   A.   Yes.

21   Q.   And were you using the skills and techniques that you

22   learned in that course and that you have used to testify in

23   court before, were you able to compare the fingerprints in G-1

24   and G-2?

25   A.   I did.

October 17, 2007

## Medina - Redirect

1  Q.  And what was your conclusion?

2  A.  That the standard A and G-1 and G-2, the fingerprints were

3  done by the same individual.  They're the same individual's

4  fingerprints.

5        MR. KOUKIOS:  I tender the witness.

6        MR. SPIVACK:  Just briefly.

7                    CROSS EXAMINATION

8  [Beginning at 10:03 a.m., 10/17/07.]

9  BY MR. SPIVACK:

10 Q.  Counsel asked you about testifying in court and you said

11 twice.  Were you qualified both times as an expert?

12 A.  I don't remember.  It has been more than two or three

13 times.

14 Q.  I'm talking about the qualifications.  It's a bad question.

15        You were presented by a lawyer as an expert to the

16 Court.  On any of those occasions, did the Court say "No, no.

17   I find he's not an expert"?

18 A.  No.

19 Q.  The Court has always found that you are an expert?

20 A.  They did, yes.

21        MR. SPIVACK:  Thank you.

22        MR. KOUKIOS:  May I ask one follow-up?

23        THE COURT:  Yes.

24                    REDIRECT EXAMINATION

25 [Beginning at 10:04 a.m., 10/17/07.]

October 17, 2007

## Medina - Redirect

1  BY MR. KOUKIOS:

2  Q.  In reaching your comparison on G-1 and G-2, did you have

3  any discussion about your findings or your analysis while you

4  were doing it with the woman sitting behind government counsel

5  table?

6  A.  No.

7  Q.  You did it all independently by yourself?

8  A.  Yes.

9  Q.  Thank you.

10        THE COURT:  Thank you very much, Mr. Medina.

11        [The witness was excused at 10:04 a.m.]

12        THE COURT:  Anything additional on this issue,

13  Mr. Koukios?

14        MR. KOUKIOS:  No, Your Honor, not by way of testimony.

15        I would just say these are certified copies of the

16  judgments and convictions.  Even the 9th Circuit has said

17  that's generally enough.  We have gone above and beyond to show

18  not only are they certified convictions in this case, but the

19  fingerprints on those convictions match the defendant's

20  fingerprints as well.

21        All five that we have submitted here are qualifiers

22  for the Armed Career Criminal Act and the Career Offender

23  Guideline.

24        In addition, there was one certified conviction, for

25  whatever reason I didn't have.  Probation does have it.  To

## October 17, 2007

## Medina - Redirect

1   save time, we have not had anybody analyze it in court today,

2   but at the same time, Mr. Beckles has not come forward with any

3   evidence to dispute the legitimacy of that one.

4           In any event, we only need to show three and we have

5   shown at least five.  If you count the one in the PSI, it's

6   six.

7           THE COURT:  Thank you.

8           Is there any additional argument by either the

9   Government or defense?

10          MR. SPIVACK:  Judge, the only thing I would ask the

11  Court -- and I honestly am not sure on this one -- one of the

12  certified copies of convictions is a burglary of an unoccupied

13  structure, and I can't recall whether in order to qualify it

14  has to be a burglary of a dwelling or if it's an unoccupied

15  structure it is sufficient under the statute.  I just don't

16  remember.

17          MR. KOUKIOS:  I'm sorry.  I misspoke a little bit.

18          That does qualify under the statute and I've cited a

19  case in my response.  It does not qualify under the Guideline.

20  So, in terms of the Career Offender Guideline, it has to be

21  burglary of a residence.  For the Armed Career Criminal Act, it

22  just has to be burglary of a structure or a residence.  It's

23  the one area where they don't overlap and I did cite a U.S.

24  Supreme Court case to that effect.

25          MR. SPIVACK:  Thank you, Judge.  Appreciate it.

October 17, 2007

Medina - Redirect

1        THE COURT:  Thank you.

2        Thank you, Mr. Koukios.

3        Mr. Spivack, any additional arguments from you?

4        MR. SPIVACK:  No, Your Honor.  I just wanted to

5   double-check with Mr. Beckles, see if he wants to --

6        THE COURT:  All right.

7        [Counsel and the defendant confer at 10:07 a.m.]

8        MR. SPIVACK:  Yes, Judge.  Mr. Beckles would like to

9   be heard, please.

10       THE COURT:  Very well.

11       THE DEFENDANT:  Good morning.

12       THE COURT:  Good morning, Mr. Beckles.

13       THE DEFENDANT:  I just want to say, Your Honor, I'm

14  sorry for taking the Court through the procedure.  I could see

15  my family ain't here.  Sorry for letting them down, too.

16  That's why they ain't here.

17       But due to the whole process I been incarcerated, I

18  had time to think.  I know I done made some bad choices as a

19  youth coming up.  Now that I have sat back and learned a lot of

20  things and now I got my own, everything focused, I'm getting on

21  the right path.  I attended a lot of things since I been

22  incarcerated such as I'm attending the GED program.  I been

23  access to the law library, do a little studying on behalf.

24       I just want to let the Court know that I'm sorry to

25  bringing it to this point right here.

October 17, 2007

## Medina - Redirect

1          THE COURT:  Thank you, Mr. Beckles.  You may be
2     seated.

3          Well, I think the Government has amply established,
4     with the testimony and evidence presented today, the
5     defendant's prior convictions that qualify him as an armed
6     career criminal.

7          I believe paragraph 18 of the presentence report sets
8     it out.  The defendant is considered a career offender because
9     he was at least 18 at the time of this offense.  This offense
10    is a felony crime of violence, the unlawful possession of a
11    sawed-off shotgun, and the defendant has at least two prior
12    felony convictions of a controlled substance offense.

13         The offense level, as noted in paragraph 18 of the
14    presentence report, goes from an adjusted offense level of 26
15    up to 37 under the Sentencing Guideline § 4B1.1(b).  So the
16    defendant has started off today's sentencing hearing with an
17    offense level of 37, a criminal history category of 6 and the
18    Guidelines recommend a sentence of, at the low end, 360 months
19    up to life.

20         Now, I share in your observations, Mr. Spivack, that
21    Mr. Beckles' long and continuous life of crime was never
22    appropriately addressed at the State Court level.  In other
23    words, even as Mr. Koukios has recognized, the defendant has 18
24    arrests that resulted in convictions and/or juvenile
25    adjudications, and I note in the presentence report 12

## Medina - Redirect

1  additional arrests that did not result in convictions, and we

2  have a defendant, Mr. Beckles, who is 24-years-old.  That's a

3  pretty extensive criminal history.  It's pretty continuous.

4  It's sort of like there's no let-up.

5       When I look at the exhibits which have been introduced

6  today, the certified copies of the prior convictions, what

7  stands out is that the defendant was never appropriately

8  punished for any of his prior felony convictions.

9       You weren't simply given one pass, Mr. Beckles.  You

10  were given too many passes and, perhaps, that sent the wrong

11  message to you.

12       I note Judge Tunis, with an Information filed spring

13  term 2006, you received a sentence of 126 days, time served,

14  for three counts of possession and sale and intent to sell

15  cannabis and cocaine.

16       Judge Murphy, with an Information filed spring 2005,

17  after you entered your plea of guilty, sentenced you to 364

18  days, Dade County Jail, for, again, three counts of possession

19  with intent to sell cocaine and cannabis.

20       Fall, 2004, an Information is returned.  You enter a

21  plea of guilty and you're sentenced by Judge Rodriguez to 11

22  days credit time served for one count of possession with intent

23  to sell cocaine.

24       Spring term 2003, following an Information, one count

25  of possession with intent to sell cocaine.  I believe the

October 17, 2007

## Medina - Redirect

1  sentence was probation, sentence entered by Judge Jacqueline

2  Scola.

3  Then fall 2003, another Information is returned,

4  burglary of an unoccupied structure, one count.  The next count

5  is grand theft, third degree, and Judge Soto sentences you to

6  121 days time served after your probation was revoked.

7  I share in Mr. Koukios' sentiments that the failure of

8  the State Criminal Justice System to adequately and

9  appropriately have addressed the severity of your crimes is not

10  a reflection upon what occurs here.  It is a sad testament that

11  you are going to be sentenced today to a term of imprisonment

12  far in excess of anything you have ever remotely experienced,

13  and Mr. Spivack has time and time again in this case presented

14  arguments on your behalf as to why I should not sentence you

15  within the Guidelines, and Mr. Koukios has responded by

16  referring the Court back to Congress' mandate as it pertains to

17  career offenders such as yourself, and Congress has spoken and

18  directed the Sentencing Commission that the Guideline for

19  career offenders should specify a sentence to a term of

20  imprisonment at or near the maximum term authorized -- the

21  maximum -- and the maximum here, of course, is life.

22  The Sentencing Commission also established certain

23  minimum offense levels where the weapon possessed is a

24  sawed-off shotgun, as it was here.

25  I am not persuaded, notwithstanding that I agree with

October 17, 2007

## Medina - Redirect

1  Mr. Spivack that you were not appropriately sentenced in the

2  State Court, to depart from the advisory Guideline range here

3  and to sentence you outside the Guidelines.

4       I have given careful consideration to the statutory

5  factors contained in 18 U.S. Code § 3553.  I am mindful of the

6  need to have this sentence reflect upon the seriousness of the

7  offense, provide deterrence and safeguard the community from

8  you, Mr. Beckles, because you have shown that you cannot live

9  within the law.

10       Therefore, it is the judgment of the Court that the

11  defendant, Travis Beckles, be committed to the Bureau of

12  Prisons to be imprisoned for a term of 360 months.  Because you

13  will have the ability to participate in the Inmate Financial

14  Responsibility Program and you appear to have the ability to

15  pay a fine, albeit, below the advisory fine range, it is

16  ordered that you pay the United States a total fine of $5,000.

17       The fine is payable to the Clerk of the United States

18  Courts and is to be forwarded to the U.S. Clerk's Office,

19  attention:  Financial Section, 301 North Miami Avenue, Room

20  150, Miami 33128.  The fine is payable immediately.

21       The U.S. Bureau of Prisons, U.S. Probation Office and

22  U.S. Attorney's Office are responsible for enforcement of the

23  order.

24       Upon release from imprisonment, you are to be placed

25  on supervised release for a term of five years.  Within 72

October 17, 2007

## Medina - Redirect

1  hours of release, you are to report in person to the Probation
2  Office in the district to which you are released.

3          While on supervised release, you are not to commit any
4  crimes.  You are prohibited from possessing a firearm or other
5  dangerous device.  You will not possess a controlled substance.
6  You will comply with the standard conditions of supervised
7  release including the following special conditions:  You will
8  submit to substance abuse treatment.  You will comply with the
9  employment requirement, self-employment restriction and
10 permissible search requirement all as are noted in Part G of
11 the presentence report.  You will pay the United States a
12 special assessment of $100.

13         Now that the sentence has been imposed, does the
14 defendant or his attorney object to the Court's finding of
15 facts or the manner in which the sentence was announced?

16         MR. SPIVACK:  Excuse me, Your Honor.

17         We would reiterate our objections made during the
18 motion to suppress, during the hearing for the motion to
19 suppress, and in the pleadings I filed in response to the
20 report and recommendation as to the motion to suppress.  We
21 would also reiterate all of our objections during the trial and
22 all of our objections that were stated today in open court.

23         Thank you, Your Honor.

24         THE COURT:  Thank you.  Those are all preserved.

25         Mr. Beckles, you have the right to appeal the

October 17, 2007

Medina - Redirect

1   conviction and sentence.  Any notice of appeal must be filed

2   within 10 days after entry of the judgment.  If you are unable

3   to pay the cost of the appeal, you may apply for leave to

4   appeal in forma pauperis.

5          Good luck to you.

6          I wish you all a good day.

7          MR. SPIVACK:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

October 17, 2007

1          C E R T I F I C A T E

2          I hereby certify that the foregoing is an accurate

3    transcription of proceedings in the above-entitled matter.

4

5    _____ 11/2/07          _____

6          DATE                    BARBARA MEDINA
                                   Official United States Court Reporter
                                   301 North Miami Avenue, Suite 404
7                                  Miami, FL  33128-7792    305.523.5518
                                                 (Fax) 305.523.5519
8                                  Email:  barbmedina@aol.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Quality Assurance by Proximity Linguibase Technologies
October 17, 2007

47

## A

ability 9:13 15:9 17:4 43:13,14
able 9:18 11:12 27:2,7 28:11
  29:24 31:9 32:5,24 35:23
above-entitled 46:3
absolutely 10:8 18:6 21:12
abuse 44:8
acceptance 16:21
accepting 17:3
access 39:23
account 11:23
accurate 46:2
Act 12:7 13:17 37:22 38:21
actions 17:3
actual 8:12 33:24
addenda 4:19 6:11 10:23,23
addendum 6:15
addition 37:24
additional 37:12 38:8 39:3 41:1
address 3:14
addressed 10:19 40:22 42:9
addresses 11:8
adequately 42:8
adjudications 40:25
adjusted 40:14
ADMINISARIVE 3:12
admissible 10:11
admission 26:10 29:5 30:5
  32:10 33:2
admitted 10:14 12:14 13:13
  26:23 29:8 30:7 31:15,16
  32:12 33:4 35:16
adopted 4:22
advanced 20:13
advise 5:23 8:15
advised 5:12
advisory 43:2,15
agency 19:20,21
Agent 4:9 10:5 12:14 16:14
  23:10
agree 42:25
ahead 15:25 18:11 24:11 27:10
  34:1
ain't 39:15,16
albeit 43:15
allowing 14:1
Almandares-Torres 3:3 6:17
  6:20 7:3,4,8 8:25 9:7 11:6,10
Almandares-Torres/Booker
  6:14
altogether 10:14
ALTONAGA 1:11
AMERICA 1:4
amply 40:3
analysis 19:23 22:14,20 25:18
  25:19 37:3
analyst 15:17 17:8,11 19:13,15
  20:9,21 22:4,9
analyze 21:14 35:6 38:1
analyzed 21:14
Andrea 2:3 19:3,4
and/or 40:24
announced 44:15
answer 14:24
anybody 38:1
anymore 7:4
apartment 13:8
apologize 10:21 22:22
apparently 16:11
appeal 44:25 45:1,3,4
appear 43:14
appearance 4:6
APPEARANCES 1:12
applied 17:2
apply 45:3
appreciate 16:2 38:25
Apprendi 3:4 11:6,9
approach 16:6 24:23
appropriate 14:5
appropriately 40:22 41:7 42:9
  43:1
approximately 18:19 20:22,23
area 38:23
argue 9:13
argument 6:13,14 7:18,23,25
  9:6,7 10:14,18,20 11:5,8 15:4
  17:25 38:8
arguments 6:10,12 12:18 39:3
  42:14

armed 12:7,9,20 13:17 37:22
  38:21 40:5
arrest 25:16
arrests 12:2 40:24 41:1
articles 13:2
aside 5:11,22
asked 10:9 15:3 34:8 35:19
  36:10
asking 8:22,23
assessment 44:12
assigned 28:1 29:15 30:24
  31:24
assist 18:2
Assistant 4:7,11
assuming 12:18
attach 15:18
attached 12:10 20:6 25:4 28:9
attended 35:10 39:21
attending 39:22
attention 43:19
attorney 1:15 4:8 5:18 44:14
Attorney's 43:22
authorized 42:20
Avenue 1:23 43:19 46:6
awarded 20:17
A.F.P.D 1:18
a.m 15:23 18:14,16,25 19:6
  23:6 26:25 29:9 30:8 31:17
  32:13 33:5,10 34:15 36:8,25
  37:11 39:7
A.U.S.A 1:14

## B

B 2:21 28:23 29:11,11 30:6,8
Bachelor's 20:10,11
back 5:22 18:9 21:7 26:9 29:11
  30:15 34:1,10 39:19 42:16
background 22:17
bad 36:14 39:18
badge 26:9 30:16
Bar 6:23
BARBARA 1:21 46:5
barbmedina@aol.com 1:24
  46:8
based 11:14
basic 20:12
basically 6:24 7:3,9,25 8:9
basis 5:23 22:6 35:12
bearing 25:14,15
Beckles 1:8 4:5,12,23 9:8 10:5
  10:20 12:18 13:9 14:10,24
  15:10,13 16:10,16 17:2 23:21
  25:14 27:5 28:21 29:25 32:9
  33:1 38:2 39:5,8,12 40:1,21
  41:2,9 43:8,11 44:25
Beckles's 4:16
Beginning 19:6 23:8 33:10
  34:15 36:8,25
behalf 4:11,15,23 5:11 39:23
  42:14
believe 4:19 7:13 10:14 14:4
  16:25 26:19 40:7 42:16
belonged 29:24
beyond 7:7,16 9:14 37:17
biology 20:11
birth 16:17 25:15
bit 38:17
Bolivar 2:3 16:8 18:5,15 19:3,4
  19:10 33:16
bolstered 10:3,7
book 16:17
Booker 5:6 16:17 7:1,1,5,14
  11:8,10
bookings 19:17
boy 12:24 13:6,14 14:3
break 6:19
brief 17:22 18:8
briefly 17:22 33:8 34:7 35:9
  36:6
bring 18:10,18
bringing 14:2 39:25
brings 13:13
broken 12:13
brought 12:22 13:9
Bureau 43:11,21
burglary 38:12,14,21,22 42:4
business 12:21
B-o-l-i-v-a-r 19:10

## C

C 2:22 30:10,18,21 31:14,17
  46:1,1
call 21:20 34:4
called 22:13 35:2,13
calls 16:8 19:2
cannabis 41:15,19
card 18:10 21:13 25:11 26:6
  29:21 31:3
cards 35:19
career 11:24 12:7,9,9 13:17,18
  37:22,22 38:20,21 40:6,8
  42:17,19
careful 43:4
carefully 4:18
case 1:3 4:17 8:5,13 10:4 11:1
  12:15 14:5 16:22 20:10 21:7
  23:10 24:15 27:18 28:2 29:1
  29:19 30:18,25 31:20,25
  37:18 38:19,24 42:13
cases 5:13 6:16,16 7:8 8:4
  11:13 13:12
case-by-case 22:6
category 40:17
caught 12:25 13:4
CECILIA 1:11
certain 7:6,7 42:22
certainly 22:24
certificate 2:12 20:17
certification 33:25
certified 15:10,17 16:24 20:5
  20:24 27:17 28:20,25 30:18
  31:1,19 32:15 33:24 37:15,18
  37:24 38:12 41:6
certify 46:2
chair 16:6
chance 10:22
characteristics 21:20,23
characterized 8:8
chevrons 3:15
Chief 3:6 9:23 10:10
children 12:25
choices 39:18
Circuit 10:19 11:2,3 37:16
circumstances 29:14 31:23
CITATION 3:1
cite 38:23
cited 11:15 13:1 38:18
cites 11:12
civilian 35:1
clarity 22:11
class 20:13,13
classes 20:12
clear 6:8 15:25 24:2 27:11 28:3
Clerk 43:17
Clerk's 43:18
client 15:21
client's 5:10
clothes 6:21,25 35:1
cocaine 8:41:15,19,23,25
Code 13:19 43:5
combination 14:16
come 5:22 10:20 38:2
coming 35:4 39:19
comments 18:1
Commission 12:8 13:19 42:18
  42:22
commit 44:3
committed 8:1,21 43:11
community 12:24 14:1,4 43:7
compare 28:11 35:23
compared 15:13 19:21 20:3,23
  21:1 27:3 30:17
comparing 21:10 35:12
comparison 17:8 19:23,23
  20:13,13 21:10,17,18,19
  22:20 23:12 25:19,22 28:1
  29:16 30:25 31:9,25 32:2
  33:12 35:7,14 37:2
comparisons 19:16,18 21:2
  23:12,24 28:17
competent 14:13 22:4 24:6
complete 20:15
completed 5:16
Complied 27:16 28:24
comply 44:6,8
compromised 19:17
conclusion 31:11 36:1
conclusions 27:2 28:14

conditions 44:6,7
confer 15:23 18:16 39:7
CONFERENCE 3:10
Congress 12:7 13:19 42:16,17
Congressional 12:11 13:16
  14:3
consider 8:18 13:21 16:20 17:1
consideration 43:4
considered 40:8
Constitution 7:5,13,14
constructive 8:13
contained 43:5
CONTENTS 2:1
contesting 16:11
continuance 5:15
continue 5:3 11:21 13:5
Continuing 11:8
continuous 40:21 41:3
control 5:18
controlled 40:12 44:5
cont'd 2:6
CONVENTIONS 3:12
convicted 8:10 9:15,20 13:13
  15:11
conviction 14:11,14,18 15:10
  23:12 27:17 28:8,20,25 30:18
  31:1,20 32:16 37:24 45:1
convictions 5:12,21 9:14,19,21
  10:1 12:3 14:15 15:18 16:24
  20:5,24 37:16,18,19 38:12
  40:5,12,24 41:1,6,6,8
copies 15:10 20:3,5 33:22,24
  33:24 37:15 38:12 41:6
copy 27:17 28:25 32:15
correct 12:19 20:1 23:25 24:3,4
  24:6
cost 45:3
counsel 3:13 4:5,8,25 14:19,21
  15:3,23 18:16 36:10 37:4
  39:7
count 38:5 41:22,24 42:4,4
counts 41:14,18
County 41:18
County's 17:12
couple 14:13 1
course 13:21 35:10,22 42:21
court 1:1,22 3:14 4:1,4,12,13
  4:16 5:3,4,6,12,14,21,23,23
  6:1,3,7,10,22 7:20 8:15 9:3
  9:12,20 11:4,10,13,14,21
  14:7,13 15:5,11,20,22 16:3,6
  16:12,19,20 17:1,4,10,14,17
  17:25 18:7,11,13,15,21,24
  19:1 22:13,18,21,24 23:21
  24:16,21,24 25:12,19 26:8,12
  26:15,19 29:8 30:7,13 31:16
  32:12 33:4,7,15,19,21 34:2,3
  34:6,9,11 35:13,23 36:10,16
  36:16,19,23 37:10,12 38:1,7
  38:11,24 39:1,16 40:2,14,22,24
  40:1,22 42:16 43:2,10,12 44:22
  44:24 45:8 46:6
Courthouse 1:22
courtroom 20:13
Courts 43:18
Court's 6:9 17:14 44:14
credit 41:22
crime 8:21 23:11 40:10,21
crimes 12:3 15:8 42:9 44:4
criminal 8:1 12:7,9 13:17 37:22
  38:21 40:6,17 41:3 42:8
criminals 11:24
CROSS 33:9 36:7
Cross-Examination 2:7,10 33:7
cut 10:10,18

## D

D 2:23 31:19,22 32:6,11,13
Dade 41:18
dangerous 44:5
database 19:22
date 16:17,18 25:14,16 26:6,9
  29:20 30:17 46:5
dated 31:3 32:2
day 11:25 45:6
days 5:9,16 8:4 41:13,18,22
  42:6 45:2
deal 12:15
dealer 10:3,6 12:14,19,20 13:13

dealt 11:3
decision 4:17 11:7,11,13
defendant 1:9,17 4:20 15:23
   17:18 18:15,16 25:21 28:21
   39:7,11,13 40:8,11,16,23
   41:2,7 43:11 44:14
defendant's 4:21 37:19 40:5
Defender 4:11
Defender's 1:18
defense 6:23 38:9
definite 5:10
degree 20:10 42:5
denied 5:6
deny 5:4
denying 5:14
depart 43:2
department 19:12 20:19 23:3
   24:9,21 35:11
Department's 21:5
depending 15:4
depends 22:10
deputy 34:23,24 35:5
Description 2:16
Descriptions 3:11
detail 21:14,17,19 22:2
details 22:5
determination 22:3,12 27:7
   32:5
determine 7:6,7 29:24 32:24
determining 16:20 17:1
deterrence 43:7
device 44:5
dire 2:5 22:23,24,25
Direct 2:4,6,9 19:5 23:7 34:14
directed 42:18
direction 12:7
directive 12:11
directives 13:16
disagrees 8:24
discussion 37:3
dispute 12:16,17 38:3
distributing 14:23 15:1
distribution 10:16 12:3
district 1:1,1,11 11:9 44:2
DIVISION 1:2
document 21:14
documents 26:22 27:18 29:1
   32:16
doing 37:4
double-check 39:5
double-checked 23:2
doubt 7:7,17 9:15
downstairs 18:9
drive-by 13:1,3
drug 10:3,6,7,16 12:3,14,16,17
   12:19,20 13:1,8,13 14:15
drugs 12:15 14:23 15:1
due 39:17
duties 19:14
duty 35:5
dwelling 38:14

                E
E 2:18,24 25:2,9 26:3 32:15,18
   32:25 33:3,5 46:1,1
earlier 27:8 28:17 30:3 31:9
   32:5,24
easy 7:10,11
Echo 29:21
effect 38:24
Eisenger 4:15
either 14:15 19:19,22 22:1,3
   38:8
Email 1:24 46:8
emperor 6:21,24
employed 19:11 34:22
employee 20:18 24:3
employment 44:9
endanger 13:25
endeavor 5:16
enforcement 35:11 43:22
enhance 5:14
enhancement 5:24 14:12
enter 41:20
entered 5:6,12 41:17 42:1
entry 45:2
established 40:3 42:22
evaluation 19:23 21:22 22:1
event 38:4

events 21:20
evidence 2:15 14:8,12,13,16
   15:7,14 26:24 29:9 30:8
   31:15,17 32:13 33:5 38:3
   40:4
Exactly 28:5
Examination 2:4,5,6,9,11 19:5
   22:25 23:7 33:9 34:14 36:7
   36:24
examine 18:18
excess 5:17 42:12
excuse 13:5 44:16
excused 37:11
exhibit 2:20,21,22,23,24 25:4
   25:17,23,25 26:2,7 27:3,10
   27:11,11,14,15,17,21,25 28:4
   28:6,8,11,12,19,20,23 29:5,9
   29:11,11,22 30:6,8,18,21
   31:6,12,13,14,17,19,22 32:6
   32:11,13,15,18,25 33:3,5
   35:16 41:5
experience 22:9
experienced 42:12
expert 18:19 22:19 23:3 36:11
   36:15,17,19
explain 19:14 20:8 21:9 35:9
extended 11:9
extensive 41:3

                F
F 46:1
face 8:16 13:7
fact 7:13,13,15,16 8:12 13:9
factions 12:21
factor 8:19,20 13:21
factors 8:21 11:22 13:10 16:21
   43:5
facts 7:6,7,15 44:15
failure 42:7
fall 41:20 42:3
familiar 6:22
family 39:15
far 5:17 42:12
fast 22:5
Fax 1:20,24 46:7
FBI 4:9 16:18 23:10 25:15 29:21
   31:4
FD-249 25:11
February 11:2
Federal 1:18,22 4:11 5:14 11:25
   12:6
felon 9:16,21,23 10:3,10
felonies 9:8 10:17 15:2
felony 14:11,14,14,15,17 40:10
   40:12 41:8
filed 4:20,24 5:2 41:12,16 44:19
   45:1
files 19:22,22
Financial 43:13,19
find 7:13,14,16 13:6 15:1 36:17
finding 44:14
findings 11:12 37:3
fine 43:15,15,16,17,20
fingerprint 15:17 17:4,7,17
   18:10 19:13,15,16,18,19,21
   20:12,21 21:13,13,22 14,20
   23:21 25:11 26:6 29:21 31:3
   35:14
fingerprinted 18:15 25:21
fingerprinting 16:1 18:5
fingerprints 15:12,13 20:6
   21:11 23:24 27:12 28:9,11,12
   28:19,20 29:18,24 32:6,24
   35:6,12,23 36:2,4 37:19,20
firearm 44:4
first 5:15 6:3,6,8,13 9:6 12:12
   21:14 22:15
five 4:19 10:24 37:21 38:5
   43:25
FL 1:16,19,23 46:7
Flagler 1:19
Florida 1:1,6 15:11 27:18 29:1
   30:18 31:20 35:11
flow 21:15,23
focus 14:8
focused 39:20
follow 6:17 7:9 17:20 25:3

following 4:17 6:16 41:24 44:7
follow-up 36:22
foregoing 46:2
forma 45:1
formally 5:1,2
fortunately 11:25 15:3
forward 38:2
forwarded 43:18
found 10:21 11:10 36:19
four 8:4 10:16 14:23
free 8:18
front 16:19 27:10,14
full-time 35:12
further 14:1
future 13:24
F.3d 11:2
F03-24434 31:20
F04-10923 32:16
F04-36481 30:19
F05-18871 29:1
F06-33667 27:19

                G
G 44:10
gang 12:21
GED 39:22
general 21:15
generally 22:8 37:17
gentleman 6:5 33:12
getting 12:3,25 18:3 39:20
girl 13:3
give 8:16,19 15:5 17:20
given 35:10 41:9,10 43:4
go 6:3,6 14:1 15:25 18:9,11
   20:11 21:18 22:8,10 24:8,11
   27:10 34:1
God 13:6,8
goes 40:14
going 5:3 6:9 16:24 17:23,24
   18:8 30:15 42:11
good 4:1,2,3,7,10,14 6:17 7:3,4
   18:22 34:17,18 39:11,12 45:5
   45:6
government 1:13 2:17,19,20,21
   2:22,23,24 12:1,6 14:9 15:9
   15:13 16:8 19:2 25:9 26:24
   29:9 30:8 31:17 32:13 33:5
   37:4 38:9 40:3
Government's 4:23 19:4 26:3
   33:3
grace 13:6,7
graduated 12:19
grand 7:6,14 42:5
Greer 3:8 11:1
guaranty 5:16
guess 5:2
Guideline 37:23 38:19,20 40:15
   42:18 43:2
Guidelines 8:8,15,19 12:10
   13:18 40:18 42:15 43:3
guilty 5:13 14:22 41:17,21
gun 8:10,11,12,13
G-r-e-e-r 11:1
G-1 2:18,19 25:6,7,9,12,13,17
   25:25 26:2,5,11,24 27:3,10
   27:11,14 28:4,6,12 29:22
   31:6,13 32:3,22,23 33:23 34:10
   35:17,23 36:2 37:2
G-2 2:18,19 25:6,7,9,12,23 26:7
   26:11,24 27:3,12 33:23 34:10
   35:17,24 36:2 37:2

                H
half 20:22
handed 25:1,6
Handing 34:3
happens 9:17
happy 34:4
hard 7:12 19:22 20:3 22:5
head 10:18
hear 4:25 6:2 7:21
heard 39:9
hearing 4:17 5:2,2 10:15 14:9
   40:16 44:18
Herald 13:2
Hey 6:25
high 14:4
highlight 6:12 7:24
highlights 11:4

history 40:17 41:3
home 12:23 13:14 14:2
honestly 38:11
Honor 4:2,3,7,10,14 5:25 6:8,13
   6:15 8:18,22,23,24 9:2,5,22
   10:9,21 11:19,20 12:22 14:10
   14:17 15:6,16 16:2,5,9 17:23
   18:17 19:2 22:16 24:20,23
   25:3 26:10,18 28:4 30:5
   31:14 32:10 33:2,6,24 34:4
   34:10 37:14 39:4,13 44:16,23
   45:7
HONORABLE 1:11
hope 17:3
hours 44:1
hurting 8:11
hypothesis 21:16

                I
identification 2:15 3:15 21:25
   22:2,2 25:10
identifications 21:5
identified 27:4 28:15 29:20
   31:4,12 32:22 33:1
identify 3:13
identity 19:17
immediately 43:20
impeach 20:20
implicit 11:11
important 13:10
impose 5:20 8:22,23
imposed 44:13
imprisoned 43:3
imprisonment 42:11,20 43:24
incarcerated 39:17,22
include 20:5
including 12:2 23:19 44:7
independent 21:3,4 23:19,24
   24:2,18,19 26:17
independently 37:7
INDEX 2:14 3:1,10
indicated 3:15 26:19
indicating 29:20
Indictment 7:15
individual 27:4 36:3
individually 36:3
industry-standard 3:14
information 15:5 22:17 41:12
   41:16,20,24 42:3
informed 5:3
initial 26:6 30:17
initialed 29:18 30:15 31:3 32:2
initials 32:21
ink 19:20
Inmate 43:13
innocent 12:25 13:4
innocents 12:25
insufficient 22:2
intensive 20:11,14
intent 41:14,19,22,25
internal 17:21
introduced 41:5
investigation 4:19
involved 12:15
in-house 20:11
issue 7:12,12 10:20 11:3 26:19
   37:12
i.e 3:15

                J
Jacqueline 42:1
jail 19:17 41:18
James 1:14 4:8
Jefferson 4:9 10:5 12:15 16:14
   23:10
job 24:14
John 4:9 23:10
Judge 1:11 5:1 6:25 7:22 11:12
   15:21,24 17:22 18:12,23
   22:22 24:11,14 29:7 30:11
   33:8 38:10,25 39:8 41:12,16
   41:21 42:1,5
judgment 15:12 27:17 28:25
   29:19 32:15 43:10 45:2
judgments 23:11 37:16
jury 4:17 7:6,6,10,14,16 9:10,14
   10:1
Justice 42:8
juvenile 40:24

**K**

keep 27:10,14
kid 10:2
kind 17:1 20:17
knees 10:10
know 4:22 6:3,20 7:18 13:2
  14:25 17:5,23 18:24 29:17
  32:1 39:18,24
knows 12:18
Koukios 1:14 2:3,6,9,11 4:2,7,8
  6:4,5 7:19 9:4,5,17,22 10:25
  11:22 15:16 16:4,5,8,13 17:6
  17:25 19:2,7 22:16,19 23:9
  24:14,19,22,25 25:3,5 26:10
  26:17 27:1 29:4,10 30:5,9,14
  31:14,18 32:10,14 33:2,6,17
  33:20,23 34:3,8,10,16 36:5
  36:22 37:1,13,14 38:17 39:2
  40:23 42:7,15

**L**

Lab 23:11
labeled 28:4
lady 16:4
law 6:18 7:3,4 9:8 11:18 13:23
  35:11 39:23 43:9
lawyer 36:15
learned 35:22 39:19
leave 45:3
legal 11:17
legitimacy 38:3
length 11:3
lengths 16:24
letters 25:4
letting 39:15
Let's 25:7 27:10 30:10
let-up 41:4
level 21:14,19,19 40:13,14,17
  40:22
levels 42:23
library 39:23
life 8:9,23 18:3 40:19,21 42:21
Line 2:16,16
listed 31:3
listening 18:1
little 38:17 39:23
live 12:24 19:20 43:8
lobby 34:8
locked 18:3
long 5:18 20:21 34:24 40:21
longer 5:23 6:17 7:3 9:18
look 7:8 8:20 13:11,22 35:16,19
  41:5
looked 14:19
Looking 14:3
loses 11:18
lot 11:12 13:24 39:19,21
loved 9:25 10:1
low 40:18
luck 45:5

**M**

M 1:11
machine 19:20
magnifier 18:18
man 8:1,10 10:2 12:14 17:23
mandate 42:16
mandatory 9:1
manner 44:15
marked 2:15 25:1,9
Marshal 18:8,17 24:22 26:16
  35:6
Marshals 16:10,15
Marshal's 34:23
match 28:20 37:19
matched 16:16
matter 11:17,18 46:3
Max 2:8 34:13,21
maximum 12:10 42:20,21,21
ma'am 33:16
mean 8:16 16:23 19:18
Medina 1:21 2:8 34:13,21 37:10
  46:5
memoranda 4:24
memorandum 4:20,21 6:11,12
  7:23,24
message 13:12 41:11
Metro-Dade 23:3

**Miami** 1:2,6,16,19,23,23 43:19
  43:20 46:6,7
Miami-Dade 17:12 19:12 20:19
  21:5 23:11 24:3,9
Michael 1:18 4:10
middle 1:11
mindful 43:5
minimum 8:15,23,25 42:23
minor 8:2,14 12:12 13:25
minute 7:1 18:21 21:8 35:2
minutes 18:19
misspoke 38:17
mistake 23:4
months 40:18 43:12
morning 4:1,2,3,7,10,14 34:17
  34:18 39:11,12
motion 5:3,7 14:20 44:18,18,20
  32:10 33:2
multi-times 13:13
Murphy 41:16
M-e-d-i-n-a 34:21

**N**

naked 7:2
name 18:9,9 25:14 34:19,20
nature 9:18 10:11
near 42:20
necessarily 17:15 33:25
need 13:10,12,14,21 14:4 17:10
  22:18 33:21 38:4 43:6
never 5:4 40:21 41:7
night 10:25
nine 8:4
nine-year 13:2
nonarmed 12:19
North 1:23 43:19 46:6
note 40:25 41:12
noted 40:13 44:10
Notes 11:11
notice 35:1 45:1
notwithstanding 42:25
number 8:7 9:18 16:18 21:23
  22:6 25:15 26:9 27:18 29:1
  29:21 30:16,19 31:4,20
numerous 8:1
nutshell 6:19
N.E 1:15

**O**

object 26:13 44:14
objected 9:9
objection 26:12,22 29:6 30:12
objections 44:17,21,22
objectives 14:3
observations 40:20
occasion 27:25 29:3,11 30:21
  30:22 31:22 32:18,19 35:6
occasions 36:16
occurs 42:10
October 1:7 27:24 29:15 30:24
  31:24 32:21
offender 12:9 13:18 37:22
  38:20 40:8
offenders 42:17,19
offense 14:15 16:17 40:9,9,12
  40:13,14,17 42:23 43:7
offenses 8:2
office 1:15,18 18:20 43:18,21
  43:22 44:2
OFFICER 4:14
Official 1:22 46:6
old 3:6 9:23 10:2,9 12:24 13:3
  13:14
once 9:17 11:5
ones 16:15 19:19
open 18:15 23:21 44:22
opinion 24:5
opposition 4:24
order 5:5 14:11 15:1,24 22:11
  24:12,15 38:13 43:23
ordered 24:17 43:16
ordinarily 24:8
original 7:24
originals 16:12
outside 24:21 43:3
overburdened 11:24
overlap 38:23
overrule 26:22

**overruled** 11:10
overturn 11:13

**P**

page 2:2,16,16 3:2,11 11:4
pages 11:2,15
paragraph 40:7,13
part 12:22 14:19 33:21 44:10
participate 44:13
pass 11:25 41:9
passes 12:4 41:10
path 39:21
pattern 21:15,24
Paula 2:3 16:8 19:2,4,10
pauperis 45:4
pay 43:15,16 44:11 45:3
payable 43:17,20
penalize 17:23
people 21:20
perform 23:14
period 5:9,10
Permanent 20:18
permissible 44:10
person 13:23 15:11 21:16 24:2
  24:6,6,22 28:15 44:1
personal 24:5
perspective 18:4
persuaded 42:16
pertains 42:16
picked 16:15
place 14:12
placed 6:10 43:24
Plaintiff 1:5
plea 41:17,21
plead 14:22
pleadings 44:19
pleas 5:13
please 4:4,5 11:21 16:7 19:1,8
  20:8 21:9 28:23 31:19 34:2
  34:19 39:9
point 10:13 11:18,24 14:16
  39:25
pointed 14:10
pointing 8:11
points 21:21,23 22:7,8,10
Police 19:12 20:19 21:5 23:3
  24:9
porch 13:3
position 6:15 7:11
positive 21:4,24
possess 44:5
possessed 42:23
possessing 44:4
possession 8:12,13 40:10
  41:14,18,22,25
possible 8:9
possibly 21:16
postpone 5:8
prediction 11:14
prefer 24:8
preferred 24:10
prepared 15:16
present 4:12 7:10,20 14:9
  15:14
presented 36:15 40:4 42:13
presentence 4:18 40:7,14,25
  44:11
preserved 44:24
pretty 41:3,3
print 17:6 22:11
printed 16:18
prints 18:18 25:22,23 27:2,3
prior 5:11 8:21 9:21 40:5,11
  41:6,8
priors 8:7,14
Prisons 43:12,21
pro 4:21
probation 4:13,14,15 37:25
  42:1,6 43:21 44:1
probe 26:20
procedure 39:14
proceed 15:20 17:18 22:21
  24:17
proceedings 1:10 46:3
process 5:19 17:24 18:3 21:1,9
  39:17
program 20:14,15 39:22 43:14
prohibited 44:4
promise 13:24

**protect** 10:6 12:16,20 13:11
  14:4
protocol 17:9,13,14,21 21:16
prove 7:10,11,12
proved 9:10
proven 9:14
provide 43:7
PSI 15:6,7 38:5
public 1:18 4:11 13:11
pump 8:9
punished 41:8
purposes 17:15
pursue 5:10
put 9:9,18,25 10:8,9 12:4,9
  16:14 18:9 30:15

**Q**

qualifications 23:16 36:14
qualified 24:6 36:11
qualifiers 37:21
qualify 38:13,18,19 40:5
question 9:12 14:20,22 15:3
  17:19 36:14
quoted 13:17 14:20
quote/unquote 7:2

**R**

R 46:1
range 43:2,15
reaching 37:2
ready 18:24
real 17:22
really 6:17 7:12 10:17
reason 37:25
reasonable 7:7,16 9:14
reasoning 6:15 7:1
reasons 5:15
recall 38:13
received 2:15 8:4,4,5 26:24
  29:9 30:8 31:17 32:13 33:5
  41:13
recess 18:9,14,21,25
recognize 26:5,7 31:1
recognized 12:6,8 40:23
recommend 44:10
recommendation 44:20
record 5:4 6:9 8:1,21 15:24
  28:19 33:21
Redirect 2:11 36:24
redone 16:19
referring 42:16
reflect 43:6
reflected 29:19 32:21
reflecting 31:4
reflection 12:13 42:10
regard 9:12
regardless 9:7 10:19
reiterate 44:17,21
rejected 11:5
rejects 11:9
relatively 8:2,14
release 43:24,25 44:1,3,7
released 44:2
remaining 11:15
remains 19:17
remember 6:20 36:12 38:16
remotely 42:12
repeatedly 10:19
report 4:19 15:8 40:7,14,25
  44:1,11,20
REPORTED 1:20
Reporter 1:22 46:6
Reporter's 2:12
representing 7:25
request 5:8,14 24:15
requested 18:17
required 20:10 21:2,4 24:8
requirement 44:9,10
requires 7:5 20:12
residence 38:21,22
respond 7:19
responded 42:15
RESPONDENTS 34:13
Responding 9:6
response 4:23 17:23 25:4
  38:19 44:19
responsibilities 19:14
responsibility 16:22 43:14
responsible 17:3 43:22

restriction 44:9
result 41:1
resulted 40:24
retrieve 33:17
return 7:15
returned 41:20 42:3
reverse 11:14
Reverses 11:9
reviewed 4:18,21
revisited 5:21
revoked 42:6
ridge 21:15,20,20,23
right 6:7 9:17 10:10 14:23
    15:19 16:19,25 18:11 24:7
    39:6,21,25 44:25
Rodriguez 41:21
Room 43:19
RPR-CM 1:21
rule 17:15
run-ins 13:23

**S**

sad 42:10
safeguard 43:7
safety 24:14
sale 8:8 41:14
sample 20:4
sat 39:19
save 38:1
saw 31:2
sawed-off 10:2 12:20,23 13:6
    14:2 40:11 42:24
saying 7:9 9:13 11:13 12:8
says 9:23 10:10 14:20
Scan 19:20
Scola 42:2
se 4:21
search 44:10
seated 4:4 19:1 40:2
second 5:20 17:8,10 22:4 26:13
    26:15 29:7 30:12 34:4
Secondly 11:19
Section 43:19
see 12:2 17:14 27:23,25 29:11
    30:21 31:22 32:18 39:5,14
seek 17:19
seen 27:21
self-employment 44:9
sell 41:14,19,23,25
send 13:11
sent 41:10
sentence 5:20 8:9,16,22,23
    12:10 14:5 17:1 40:18 41:13
    42:1,1,14,19 43:3,6 44:13,15
    45:1
sentenced 41:17,21 42:11 43:1
sentences 5:13 8:3,6 12:12
    13:25 42:5
sentencing 1:10 4:12,16,20,24
    5:9 6:11,12 7:23,24 12:8
    13:18 14:9 15:14 40:15,16
    42:18,22
sentiments 42:7
serious 14:15
seriousness 43:6
served 41:13,22 42:6
set 5:22 13:19 21:10 22:7 28:8
sets 40:7
setting 5:11 6:6
severity 42:9
share 40:20 42:7
Sharod 16:16 25:14
Shepard 3:7 11:11 14:13 15:7
shoot 13:7
shooting 13:3
shootings 13:1
short 18:14,25
shot 13:3
shotgun 10:2,6 12:16,20,23,23
    13:7,9,14 14:2 40:11 42:24
show 6:17 17:2 37:17 38:4
shown 10:1 38:5 43:8
shows 8:1 13:24
side 15:4
side's 18:4
SIDE-BAR 3:10
side-by-side 21:19
signed 26:9
similarly 18:1,1

simply 41:9
sir 14:24 34:17
sitting 16:4 37:4
situation 6:20
six 9:9,25 10:9 12:2 38:6
six-year 10:12 12:24 13:14
six-year-old 13:6 14:3
skills 23:17 27:8 28:16 30:2
    31:8 32:4,23 35:21
society 13:15
somebody 12:2 21:2 24:9,21
sorry 22:22 27:11 29:4,18
    30:11 38:17 39:14,15,24
sort 41:4
Soto 42:5
SOUTHERN 1:1
speaker 3:14
special 4:9 23:10 44:7,12
specifically 11:5
specify 42:19
spell 19:8 34:19
spill 13:8
Spivack 1:18 2:5,7,10 4:3,10,11
    4:22 5:1,25 6:2,5,8,23 7:22
    10:24 14:8 15:21,24 16:10,18
    17:19,22 18:12,23 22:22 23:1
    23:6 26:13,16,20 29:6 30:11
    33:8,11,14 36:6,9,21 38:10
    38:25 39:3,4,8 40:20 42:13
    43:1 44:16 45:7
spoken 42:17
spring 41:12,16,24
Square 1:22
stage 21:18
stand 18:10
standard 19:25 21:10 22:7
    23:11 25:11,22,25 26:2,5,7
    28:1,3,6 29:21 31:4,12 32:3
    32:22 36:2 44:6
standards 16:9 19:19 20:23
    32:4
stands 41:7
start 5:1 25:7
started 5:2 40:16
state 4:6 5:11,21 9:7 11:23,23
    12:4,13 15:10 19:8 34:19
    40:22 42:8 43:2
stated 32:2 44:22
States 1:1,4,11,22 3:8 4:5,8
    6:23 11:1 13:19 43:16,17
    44:11 46:6
status 20:18
statute 38:15,18
statutory 43:4
Ste 1:22
step 12:4 18:7 21:7 33:16
stipulated 9:15 14:11
stipulating 9:8,23 10:13
stipulation 9:16,20 10:17
story 6:21
Street 1:15,19
structure 38:13,15,22 42:4
studying 39:23
subject 5:20 29:6 30:11
submit 21:2 23:10,24 44:8
submitted 19:20 20:4 33:24
    37:21
substance 40:12 44:5,8
successful 5:22
successfully 20:15
sufficient 21:17,22,24 22:5
    38:15
Suite 46:6
sum 7:18
supervised 43:25 44:3,6
supporting 27:18 29:1
supposedly 15:1
suppress 44:18,19,20
suppression 10:15
Supreme 11:13,14 38:24
sure 15:9,24 38:11
SWORN 19:4 34:13
system 11:24 12:13 42:8

**T**

T 46:1,1
table 2:1 4:8 37:5
take 5:17,19 6:9 14:12 18:8,21
    35:16

taken 19:19 25:16
talked 31:8
talking 36:14
techniques 23:16 27:8 28:16
    30:2 31:8 32:23 35:21
tell 8:3
tells 7:1,5 24:11
tender 22:19 33:6 36:5
tenure 35:5
term 41:13,24 42:11,19,20
    43:12,25
terminology 28:4
terms 38:20
test 26:20
testament 42:10
testified 10:5 23:17 27:8 28:16
    30:2 32:4,23
testifies 26:14
testify 22:13 24:11 26:18 34:6
    35:13,22
testifying 36:10
testimony 16:14 17:19,20
    20:14 26:21 37:14 40:4
Thank 5:25 6:1 7:22 9:2,3,5
    14:6,7 16:2 18:12,13,23 23:6
    33:15,16 34:2 36:21 37:9,10
    38:7,25 39:1,2 40:1 44:23,24
    45:7,8
Thanks 35:4
theft 42:5
thing 15:6 19:25 38:10
things 13:5 16:17 20:24 39:20
    39:21
think 6:19 8:5,5 10:13,17 13:10
    18:2 39:18 40:3
thinking 18:2
thinks 6:24 8:24
third 42:5
thought 5:6 24:16
three 10:16 14:14,22 36:12 38:4
    41:14,18
time 13:3 14:25 5:10,17 6:9
    22:15 38:1,2 39:18 40:9
    41:13,22 42:6,13,13
times 14:23 35:15 36:11,13
today 5:20 23:22,25 24:11
    25:21,23 26:8 29:12 33:12
    35:1,19 38:1 40:4 41:6 42:11
    44:22
today's 40:16
Todd 4:15
told 6:21
top 12:10 13:20 26:6
total 43:16
training 20:8,12,14,15 35:9
transcript 1:10 14:19
transcription 46:3
Travis 1:8 4:5 16:16 25:14 27:5
    28:21 29:25 32:9 33:1 43:11
treatment 44:8
trial 7:6,16 10:17 14:10 44:21
truth 7:2
try 12:4
Tunis 41:12
turn 27:14 28:23 30:10 31:19
twice 36:11
two 6:12 35:12,15,19 36:12
    40:11
two-week 35:10
type 14:25 21:15,24

**U**

unable 45:2
unbelievable 16:23
underlying 15:7
undermined 11:6
understand 5:8 16:25 17:25
    18:4
unfortunately 11:23 12:24 15:3
United 1:1,4,11,22 3:8 4:5,8
    6:23 11:1 13:19 43:16,17
    44:11 46:6
unknown 19:17
unlawful 40:10
unoccupied 38:12,14 42:4
use 23:16 25:17 26:2
usually 21:13
U.S 1:15 22:7 34:23 38:23 43:5
    43:18,21,21,22

**V**

valid 8:25
various 6:11
vary 22:6
verification 19:24 21:3,4 23:19
    23:25 24:3,18,19
verified 22:3
verifier 26:17
verify 17:8,10
versus 3:8 4:5 11:1
violence 40:10
violent 10:3 12:3 14:15
voir 2:5 22:23,24,25
vs 1:7

**W**

wait 6:25 34:8
waiting 6:25
waive 11:17
waived 9:8,13 10:14
want 6:2,12 26:17 39:13,24
wanted 7:24 14:8 39:4
wants 7:19 16:18 39:5
war 10:7 13:4,8
warring 42:1
wars 13:1
wasn't 8:12 9:20 15:14
watch 17:18
way 8:21 15:2 30:15 37:14
weapon 42:23
weeks 35:12
weight 8:20 17:19 26:21
weren't 41:9
West 1:19
we're 4:16 8:22,23 16:24 18:8
we've 13:20
whatsoever 16:22
willing 15:18
willingly 18:2
wish 34:5 45:6
witness 10:7 16:6 17:7,12,16
    18:6 19:4 22:19 24:23 25:13
    26:13,15,20 29:7 30:12 33:6
    33:18 34:5,13 36:5 37:11
woman 37:4
words 40:23
work 17:9,10,15 19:12,16
worst 12:22
wouldn't 9:10
write 10:22
written 13:18
wrong 8:17 41:10

**Y**

Yeah 10:16
year 8:5,16,25 13:2 20:22
years 8:9,22 18:3 34:25 43:25
younger 6:20
youth 39:19

**$**

$100 44:12
$5,000 43:16

**0**

07-20305-CR-Altonaga 1:3

**1**

1 21:14,19
10 3:6 18:19 22:10 45:2
10,000 20:25 23:2
10/17/07 19:6 23:8 33:10 36:8
    36:25
10:00 33:10
10:02 34:15
10:03 36:8
10:04 36:25 37:11
10:07 39:7
11 2:23 3:8 41:21
11th 10:19 11:2,3
12 3:4,7 40:25
12-month 20:14
120 5:9,16
121 42:6
126 41:13
1267 11:2
1273 11:3,4

**1274** 11:15
**1276** 11:3,16
**13th** 27:24 29:15 30:24 31:24
    32:21
**15** 2:22 8:25 18:21
**150** 1:19 43:20
**16** 22:10
**17** 1:7
**18** 8:18 12:2 13:22 40:7,9,13,23
    43:5
**19th** 10:22

————————— **2** —————————

**2** 21:19
**2/24** 25:15
**20** 2:3,4
**20th** 10:23
**2002** 35:10
**2003** 41:24 42:3
**2004** 41:20
**2005** 41:16
**2006** 11:2 41:13
**2007** 1:7 25:16 27:24 29:15
    30:24 31:24 32:21
**22** 2:19 34:25
**22-year** 35:5
**23** 2:5
**24** 2:6 13:22
**24th** 11:2
**24-years-old** 41:2
**26** 2:18 40:14
**27** 2:19

————————— **3** —————————

**3** 2:24
**30** 2:20 8:9,16,22 18:3
**301** 1:23 43:19 46:6
**305.523.5518** 1:23 46:7
**305.523.5519** 1:24 46:7
**305.530.7120** 1:20
**305.536.6900** 1:19
**31** 2:21
**32** 2:22
**33** 2:23
**33128** 43:20
**33128-7792** 1:23 46:7
**33130** 1:19
**33132** 1:16
**34** 2:7,24
**35** 2:8,9
**3553** 8:18 43:5
**3553(a)** 11:19,22 13:11 16:21
**360** 40:18 43:12
**364** 41:17
**37** 2:10,11 40:15,17

————————— **4** —————————

**4B1.1(b)** 40:15
**4th** 1:15
**4/12** 25:16
**404** 1:22 46:6
**404(b)** 10:12
**440** 11:2
**47** 2:12

————————— **5** —————————

**51887** 1 29:19

————————— **6** —————————

**6** 2:21 40:17

————————— **7** —————————

**7** 2:18,20 3:3,5
**72** 43:25

————————— **8** —————————

**8:52** 15:23
**8:59** 18:14

————————— **9** —————————

**9th** 37:16
**9:08** 18:16
**9:11** 18:25
**9:45** 19:6
**9:50** 23:8
**9:53** 26:24

**9:56** 29:9
**9:57** 30:8
**9:58** 31:17
**9:59** 32:13 33:5
**963392FD7** 25:15 29:21 31:5
**99** 1:15

October 17, 2007